Filed 2/14/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL LOVELACE,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | A168924<br><br>(San Francisco Super. Ct.<br>Nos. 23000157, 22012175) |

Our opinion in *Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65 (*Chavez Zepeda*) rejected separation of powers and void-for-vagueness challenges to certain aggravating factors enumerated in California Rules of Court, rule 4.421 (rule 4.421), as alleged by information against the defendant in that case. But we noted and declined to address the constitutionality of a broad, open-ended residual clause in rule 4.421(c) because the People did not rely on it there. (*Chavez Zepeda*, at p. 92.) The petition for writ relief here raises this open issue, so we now address it.

The triad sentencing scheme that governs felony sentencing under the determinate sentencing law (Pen. Code, § 1170 et seq.) (the DSL) empowers a sentencing court to select a sentence above the middle term only where "circumstances in aggravation" have been found by a jury beyond a

1

reasonable doubt or admitted by stipulation (Pen. Code, § 1170, subd. (b)(2)).[1] Rule 4.421 sets forth 12 circumstances in aggravation "relating to the crime" (rule 4.421(a)(1)–(12)) and five "relating to the defendant" (rule 4.421(b)(1)–(5)). But under the rule 4.421(c) residual clause, circumstances in aggravation may also include "[a]ny other factors . . . that reasonably relate to the defendant or the circumstances under which the crime was committed."

Included in the information in this rape and aggravated kidnapping case is an alleged rule 4.421(c) aggravating factor that the defendant, Michael Lovelace, engaged in "similar prior conduct." After losing a section 995 motion challenging the constitutionality of the rule 4.421(c) residual clause allegation against him, Lovelace sought interlocutory review in this court by petition for a writ of prohibition. He argued that an adverse jury finding of rule 4.421(c) aggravating circumstances will expose him to upper term triad sentencing under section 1170, subdivision (b)(2).

We issued an order to show cause and held oral argument, but subsequently vacated the submission and took supplemental briefing following the Supreme Court's decision in *People v. Lynch* (2024) 16 Cal.5th 730, 754 (*Lynch*). *Lynch* resolved certain resentencing-related issues in the retroactive application of section 1170, subdivision (b)(2), as amended by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) effective January 1, 2022 (see Stats. 2021, ch. 731, § 1.3), and in doing so, supplied important guidance for the interpretation and application of the Senate Bill 567 amendments.

---

[1] All undesignated statutory references are to the Penal Code, and all undesignated references to rules are to the California Rules of Court.

Having considered *Lynch* and supplemental briefs from the parties pertaining to it, we now grant writ relief. Because the rule 4.421(c) residual clause is so vacuous as to be devoid of meaning, we hold that, by granting prosecutors—and ultimately juries—an open-ended power to define sentencing criteria on an ad hoc basis, the residual clause exceeds the Judicial Council's delegated authority to adopt rules designed to "promote uniformity in sentencing" under section 1170.3. It therefore violates article III, section 3, the separation of powers clause, of the California Constitution.

## I. BACKGROUND

### A. *Procedural Background*

After a June 2023 preliminary hearing, the People filed an information against Lovelace alleging, in two consolidated cases, rape, aggravated kidnapping and nine other felony offenses,[2] along with certain special sentencing enhancements and seven aggravating factors alleged under rule 4.421. Among the aggravating factors is an allegation that the rule 4.421(c) residual clause applies to counts 1, 2, 3, 4, 6, 8, and 9 because Lovelace "has similar prior conduct."

Lovelace moved to set aside the information under section 995 on various grounds, including a contention that all of the alleged aggravating factors are unconstitutional. Premising his constitutional attack on the fact that none of the rule 4.421 aggravating factors alleged against him was drafted " 'with a jury in mind,' " and advancing both separation of powers and due process arguments, he contended that the residual clause aggravating factor is especially problematic. The court denied the motion, and Lovelace

---

[2] In the 11 counts, the district attorney charges Lovelace with eight felonies and three misdemeanors involving rape, sexual assault, assault, domestic violence, false imprisonment, burglary, grand theft, and contempt of court.

3

sought review by petition for a writ of prohibition. We granted an order to show cause limited to the constitutionality of the residual clause.

## B. *Statutory Background*

We begin with some statutory context. It is useful to bear in mind "three distinct phases in the evolution of section 1170. The first began in 1977 when the determinate sentencing law (§ 1170 et seq.) (DSL) went into effect, replacing California's system of indeterminate sentences with 'a system of specification of three possible terms of imprisonment for each offense.'" (*Chavez Zepeda, supra,* 97 Cal.App.5th at p. 73; see *Lynch, supra,* 16 Cal.5th at p. 754.) "Under this version of section 1170, the trial court was to determine aggravating and mitigating circumstances by a preponderance of the evidence. (*People v. Sandoval* (2007) 41 Cal.4th 825, 836 (*Sandoval*).) The DSL directed the Judicial Council to 'seek to promote uniformity in sentencing' by '[t]he adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to . . . [¶] (2) Impose the lower, middle, or upper prison term.'" (*Chavez Zepeda,* at p. 73.)

Second, "[i]n 2007, the United States Supreme Court found this sentencing scheme unconstitutional on the ground that 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.'" (*Chavez Zepeda, supra,* 97 Cal.App.5th at p. 74, citing *Cunningham v. California* (2007) 549 U.S. 270, 281 (*Cunningham*).) To bring California law into conformity with its holding in *Cunningham,* the high court identified two optional approaches California could take. California "may follow the paths taken by its sister States" to require jury adjudication of maximum sentence exposure "or otherwise alter its system, so long as the State observes Sixth

4

Amendment limitations declared in this Court's decisions." (*Cunningham*, at p. 294.)

Following the decision in *Cunningham*, "the California Legislature amended section 1170 . . . to provide that the choice between the lower, middle, and upper terms 'shall rest within the sound discretion of the court,' with the court 'select[ing] the term which, in the court's discretion, best serves the interests of justice' and stating reasons for its decision. (Former § 1170(b), enacted by Stats. 2007, ch. 3, § 2, pp. 6–7.) The amendment gave judges 'broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term. [Citations.] [It] amended section 1170 so that (1) the middle term [was] no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge [had] the discretion to impose an upper, middle or lower term based on reasons he or she states.' [Citation.] By enacting this amendment, the Legislature selected the second option presented by the high court in *Cunningham*." (*Lynch*, *supra*, 16 Cal.5th at pp. 747–748.)

The third phase in the evolution of the DSL began in 2022 when, after more than a decade of experience, the Legislature changed course by amending section 1170, subdivision (b), in Senate Bill 567. "The effect of the 2022 amendment was to embrace *Cunningham*'s first option." (*Lynch*, *supra*, 16 Cal.5th at p. 748.) Under section 1170, subdivision (b), as amended by Senate Bill 567, upward departures from the middle term to the maximum may be imposed "only if 'there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial

5

by the jury or by the judge in a court trial [after a jury waiver].' In its analysis of Senate Bill 567, the Senate Committee on Public Safety noted that the bill's proponents 'argue that this change is necessary to ensure that harsher sentences receive the greatest scrutiny and justification before they are imposed,' and that '[b]y allowing aggravating factors to be submitted to the factfinder, defendants will be better able to dispute the information on the record that may not be true.' " (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 74.) As we noted in *Chavez Zepeda*, "section 1170(b)(2) [now] unambiguously conveys the Legislature's intent to have the jury make findings about the truth of aggravating factors in rule 4.421 . . . ." (*Chavez Zepeda*, at p. 77.)

### C. *Rule 4.421*

"In any case in which the sentence prescribed by statute for a person convicted of a public offense is a term of imprisonment in the state prison . . . of any specification of three time periods, the court shall sentence the defendant to one of the terms of imprisonment specified unless the convicted person is given any other disposition provided by law . . . ." (§ 1170, subd. (a)(3).) To that end, the Legislature has delegated to the Judicial Council the authority to "adopt[] . . . rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to . . . impose the lower or upper prison term." (§ 1170.3.) And "[i]n sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council." (§ 1170, subd. (a)(3).)

Together, rules 4.420 and 4.421 govern felony triad sentencing under the DSL. Rule 4.420(b)—which was adopted March 14, 2022—tracks section 1170, subdivision (b) as amended by Senate Bill 567. Section 1170, subdivision (b)(2) now provides that the court may only choose an upper term

6

when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial. (§ 1170, subd. (b)(2).) Rule 4.421, unlike Rule 4.420, has not been updated to conform to Senate Bill 567. As we noted in *Chavez Zepeda*, "Rule 4.421 (formerly rule 421) has been in place since 1977." (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 76.)

Rule 4.421, titled "Circumstances in aggravation," is structured in three subdivisions, with the first, subdivision (a), titled "Factors relating to the crime," which lays out 12 enumerated criteria; the second, subdivision (b), titled "Factors relating to the defendant," which lays out five enumerated criteria; and the third, subdivision (c)—containing the residual clause—titled "Other factors," which permits consideration of "[a]ny other factors statutorily declared to be circumstances in aggravation or that reasonably relate to the defendant or the circumstances under which the crime was committed."

So far as we have been able to discern, the rule 4.421(c) residual clause is an artifact of a now-discarded approach to triad sentencing. Consistent with the system of open-ended judicial discretion that governed triad sentencing during the period between 2007 and 2021, the residual clause was adopted in 2018 "to recognize that in addition any statutory factors identified as aggravating or mitigating circumstances, the court may consider factors that reasonably relate to the defendant or the circumstances under which the

7

crime was committed."[3]  Unlike the specifically enumerated aggravated factors in rule 4.421(b) or the "factors statutorily declared to be circumstances in aggravation" in rule 4.421(c),[4] , the residual clause creates a residuum of discretion to consider "any other factor reasonably related to the sentencing decision."  (Rule 4.420(d).)

**D.** *The Rule 4.421 Challenge in this Case*

The defendant in *Chavez Zepeda* brought separation of powers and vagueness challenges to the aggravating charges against him under rule 4.421(a)(3) (vulnerability of victim), (a)(7) (conviction of crimes for which consecutive sentence could have been imposed), (a)(8) (crime involves

---

[3] Judicial Council of California, Criminal Law Advisory Committee, Invitation to Comment, SPR17-09 (2017), Criminal Law: Felony Sentencing, at page 4; see Judicial Council of California, Sentencing Practices Advisory Committee, Supplementary Report and Recommendations concerning Sentencing Rules and Sentencing Reporting System (1977).

[4] See, e.g., Health and Safety Code sections 11373, subdivision (b) (failure to complete treatment program), 11379.6, subdivisions (b) through (d) (manufacture of drugs near residence, etc.); Penal Code sections 136.1, subdivision (f) (force to intimidate witness), 186.22, subdivision (b)(2) (gang-related offense near school), 243.4, subdivision (i) (sexual battery against employee), 422.75, subdivision (c) (hate crime with firearm), 422.76 (hate crime), 502.9, 515, 525 (thefts against elderly person), 653j, subdivision (c) ("severity"), 667.95 (video recording of crime), 1170.7 (robbery of pharmacy to obtain drug), 1170.8 (place of worship), 1170.71 (use of obscene matter in violation of § 288), 1170.72 (drug offenses involving minors under 12), 1170.74 (crystalline form of methamphetamine), 1170.76 (family relationship or presence of minor in domestic violence), 1170.78 (arson in retaliation), 1170.81 (peace officer victim), 1170.82 (specified buyers of drugs), 1170.84 (tying, binding or confining), 1170.85 (witness dissuasion or retaliation, elderly victim, or disabled victim), 1170.86 (sex offense in school zone), 1170.89 (knowledge that firearm was stolen), 1202.4, subdivision (f)(9)(A) (failure to disclose assets for restitution).

planning, sophistication or professionalism), (a)(11) (defendant took advantage of position of trust or confidence), and (b)(1) (defendant engaged in "violent conduct" posing "serious danger to society"). (*Chavez Zepeda, supra,* 97 Cal.App.5th at pp. 71–72.)

The constitutional challenges before us in this case are more targeted. In these writ proceedings, Lovelace attacks the use of various enumerated subdivisions of rule 4.421, which is the same argument defendant Chavez Zepeda made with respect to the enumerated aggravating factors in rule 4.421(a)(3), (7), (8), (11) and (b)(1). But because the prosecution in *Chavez Zepeda* did not use the open-ended "any other factors" residual clause in rule 4.421(c) "to propose aggravating factors beyond those specifically enumerated in the rule" (*Chavez Zepeda, supra,* 97 Cal.App.5th at p. 79), we declined to address "any separation-of-powers or nondelegation problem" presented by the residual clause (*ibid.*) or "whether that provision is unconstitutionally vague" (*id.* at p. 92).

We now pick up where we left off in *Chavez Zepeda,* focusing solely on the rule 4.421(c) residual clause, and addressing only Lovelace's separation of powers argument. As we noted there, "the Judicial Council [has recently] developed jury instructions for 11 of the aggravating factors in rule 4.421. (See CALCRIM Nos. 3224–3234)" (*Chavez Zepeda, supra,* 97 Cal.App.5th at p. 91), including for each of the five enumerated aggravating factors we considered in that case. There is no CALCRIM instruction for the rule 4.421(c) residual clause, presumably because the clause itself was not designed to be presented to the jury.

9

## II. DISCUSSION

At the outset, we pause to frame exactly what we understand the parties to be focused upon—and what we mean—in referring to the rule 4.421(c) "residual clause."

Rule 4.421(c) permits "[a]ny other factors statutorily declared to be circumstances in aggravation or that reasonably relate to the defendant or the circumstances under which the crime was committed" to be taken into account in triad sentencing. Because the Legislature has specifically defined many aggravating factors by statute (see *ante*, fn. 4), we make clear as a threshold matter that we are addressing only the portion of rule 4.421(c) beginning with the disjunctive phrase "*or* that reasonably relate to the defendant or the circumstances under which the crime was committed." (Italics added.) This is what we mean in referring to the rule 4.421(c) "residual clause."

With that preface in mind, we turn to the parties' arguments.

### A. *The People's Contention That We Should Not Consider Lovelace's Constitutional Challenges to the Residual Clause*

The People first argue we should not address "the substantive issues" Lovelace presents (which we understand to mean the merits of Lovelace's separation of powers and due process challenges to the residual clause) because, by mentioning these issues only in passing in his section 995 motion, he failed to give the trial court an adequate opportunity to address them. This argument is meritless. Lovelace argued below that all of the aggravating factors alleged in the information—including the residual clause factor—violated the separation of powers clause of our state Constitution and were void for vagueness under the due process clause of the United States Constitution. The trial court's denial of Lovelace's motion rejected this contention in its entirety.

10

In a related vein, the People argue the proper vehicle for Lovelace to raise his vagueness and separation of powers challenges was a demurrer, not a section 995 motion. (See § 1004, subd. (f)). Because Lovelace did not demur below, the People contend he has not preserved his claim for our review.[5] We reject that argument as well. The People cite no legal authority for it, which is understandable because the only authority addressing the point goes the other way. As Lovelace points out, *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170 considered via a petition for a writ of mandate certain constitutional challenges to the validity of a statute that the petitioner raised in a section 995 motion. (*Id.* at p. 192, fn. 16.) The court concluded the petitioner "properly raise[d] these matters on his section 995 motion and received an adverse ruling thereon. Thus, these issues are properly before us." (*Ibid.*) We so hold here as well.

The People also argue that Lovelace's petition is barred by our holding in *Chavez Zepeda, supra*, 97 Cal.App.5th at p. 93 that, at least as they read our opinion, a section 995 motion may not be used to challenge aggravating factors alleged in a pleading. But that is not an accurate statement of our holding in *Chavez Zepeda*. Rather, in discussing *People v. Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, which defendant Chavez Zepeda relied on to argue that the aggravating factors alleged against him should be set aside for lack of evidence presented at a preliminary hearing, we noted that the *Mendella* court *rejected* the idea that offenses, and not provisions related to

---

[5] Lovelace stated in his brief in support of his section 995 motion below that he was "demur[ring]" to the aggravating factors as improper under the separation of powers clause and void-for-vagueness doctrine, but he did not otherwise discuss, and the court did not rule on, any "demurrer."

the penalty imposed, were subject to a section 995 motion to dismiss. (*Chavez Zepeda*, at p. 93.)

Indeed, in *Chavez Zepeda*, where defendant Chavez Zepeda, much like Lovelace, filed a petition for writ of mandate or prohibition after the trial court's denial of his section 995 motion, we exercised our discretion to consider a constitutional void-for-vagueness issue even though Chavez Zepeda did not squarely frame his argument "that rule 4.421's factors are too amorphous for use by a jury" (*Chavez Zepeda, supra*, 97 Cal.App.5th at pp. 81–82) as a due process issue, and *amici curiae* for the first time raised the constitutional dimension of the vagueness issue in this court (*ibid.*). We see no reason to treat this writ petition differently, particularly since Lovelace's residual clause contentions build upon our recent holding on the merits in *Chavez Zepeda*.

## B. *Lovelace's Claim That Rule 4.421(c)'s Residual Clause Violates Separation of Powers*

On the merits, Lovelace argues "the residual clause offends separation of powers and the nondelegation doctrine because it gives prosecutors unchecked authority to make up the law that applies in the sentencing phase of a criminal trial." Reviewing this issue de novo (*Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, 1114), we agree.

### 1. Applicable Principles

" 'The California Constitution establishes a system of state government in which power is divided among three coequal branches (Cal. Const., art. IV, § 1 [legislative power]; Cal. Const., art. V, § 1 [executive power]; Cal. Const., art. VI, § 1 [judicial power]), and further states that those charged with the exercise of one power may not exercise any other (Cal. Const., art. III, § 3).' [Citation.] Though the branches share 'a certain degree of mutual oversight and influence,' they are vested 'with certain "core" [citation] or "essential"

12

[citation] functions that may not be usurped by another branch.' [Citation.] As relevant here, '[t]he legislative branch defines those crimes that can be charged, the executive branch decides what crimes to charge, and the judicial branch decides whether to sustain those charges.' [Citation.] The power to ' "fix penalties" ' is also ' "vested exclusively in the legislative branch." ' " (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 78.)

This is a venerable principle in California law (see *Upham v. Supervisors of Sutter County* (1857) 8 Cal. 378, 382–383 (*Upham*); *Gaylord v. City of Pasadena* (1917) 175 Cal. 433; *Slavich v. Walsh* (1947) 82 Cal.App.2d 228, 235; *Kugler v. Yocum* (1968) 69 Cal.2d 371, 381 (*Kugler*)) and a keystone in the constitutional structure of our state government. "[W]hile the Legislature may not divest itself of its proper functions, or delegate its general legislative authority[,] it may still authorize others to do those things which it might properly, yet cannot understandingly, or advantageously, do itself." (*Upham*, at p. 384.) In *Chavez Zepeda*, distilling California nondelegation precedents to their modern expression, we said, " '[t]he Legislature must make the fundamental policy determinations, but after declaring the legislative goals and establishing a yardstick guiding the administrator, it may authorize the administrator to adopt rules and regulations to promote the purposes of the legislation and to carry it into effect.' " (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 79.)

At its core, the nondelegation doctrine's fundamental concern is with legislative abdication by failure to provide meaningful guidance, either at the level of basic policy or in implementation of policy. Thus, " '[a]n unconstitutional delegation of authority occurs . . . when a legislative body (1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy.

[Citation.]' " (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 805; see *Newsom v. Superior Court*, *supra*, 63 Cal.App.5th at p. 1114; *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1146–1147.)

Ultimately in applying nondelegation principles, we are looking to guard against uncontrolled exercises of legislatively conferred discretion. (*Wilke & Holzheiser, Inc. v. Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 368.) Drawing upon administrative law precepts, our Supreme Court explained in *Kugler* that " '[t]he need is usually not for standards' " in the formal sense of codified rules or principles (*Kugler*, *supra*, 69 Cal.2d at p. 381), " 'but for safeguards' " against arbitrariness (*ibid.*, citing 1 Davis, Administrative Law Treatise (1958) § 2.01.) According to the *Kugler* court, " '[The] most perceptive courts are motivated much more [in nondelegation cases] by the degree of protection against arbitrariness' " than by the use of a particular form of words to carry out the delegation. (*Kugler*, at p. 381.)

### 2. Rule 4.421 Exceeds the Legislative Delegation in Section 1170.3

As noted above, the Legislature authorized the Judicial Council to "adopt[] rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision" to, inter alia, grant or deny probation or mandatory supervision, impose upper or lower prison terms, impose enhancements, or impose concurrent or consecutive sentences. (§ 1170.3, subd. (a)(1)–(7).) The Council's overarching mandate under section 1170.3, set forth in the preamble to this grant of rulemaking authority, is to adopt rules that "promote uniformity in sentencing." (*Ibid.*)

The leading case applying the nondelegation doctrine to what are now rules 4.421 and 4.423, adopted pursuant to the authority granted by section

14

1170.3, is *People v. Wright* (1982) 30 Cal.3d 705 (*Wright*). There, our Supreme Court considered former rules 421 and 423, the precursors to 4.421 and 4.423 as renumbered. (*Wright*, at p. 708.) Former rules 421 and 423 established standards for consideration at sentencing providing that "[s]election of the upper term is justified only if circumstances in aggravation are established by a preponderance of evidence and outweigh circumstances in mitigation" and selection of the lower term was justified "only if circumstances in mitigation are established by a preponderance of the evidence and outweigh circumstances in aggravation." (*Wright*, at p. 710.)

The defendant in *Wright* argued the Judicial Council's adoption of former rules 421 and 423 was "contrary to powers granted the Judicial Council by article VI, section 6 of our Constitution and that the legislative direction to adopt such rules lacks proper standards and is an invalid delegation of legislative power." (*Wright*, *supra*, 30 Cal.3d at p. 709.) The aggravating factors considered in *Wright* all required proof of specific, enumerated circumstances either "relating to the defendant" or "relating to the crime." (*Id*. at p. 710, fn. 2; former rule 421 (a)–(b).) The rule 4.421(c) residual clause language we now address was not at issue in that case. As noted above, it was added to rule 4.421 only in 2018.

Rejecting a nondelegation challenge to former rules 421 and 423 in *Wright*, the Supreme Court emphasized the Legislature's fundamental policy choice that prison terms should be chosen from specified "alternatives on the basis of circumstances relating to the crime and to the defendant." (*Wright*, *supra*, 30 Cal.3d at p. 713.) The court concluded that, in section 1170, subdivision (a), the Legislature made a reasonable grant of authority to the Judicial Council, a body with great expertise in designing sentencing administration, and that the "standards" embodied in this statutory

15

delegation were "sufficiently precise in the circumstances." (*Wright*, at p. 713.)[6]

We reach a different conclusion with respect to the rule 4.421(c) residual clause. Although the Legislature " 'properly may delegate some quasi-legislative or rulemaking authority to administrative agencies' " (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 79), it may not delegate "unrestricted authority to make fundamental policy decisions." (*Wright*, *supra*, 30 Cal.3d at p. 712.) Under its delegated the power to promulgate sentencing rules pursuant to section 1170.3, the Judicial Council has provided meaningful implementation guidance in rules 4.21(a) and (b), but not in rule 4.21(c)—at least not under the triad sentencing regime as amended by Senate Bill 567.

---

[6] The analogous federal nondelegation doctrine, like our state version of nondelegation, rests on separation of powers principles and has a similarly venerable history. (See *Hampton & Co. v. United States* (1928) 276 U.S. 394, 409; *Field v. Clark* (1892) 143 U.S. 649, 692.) A frequently cited federal nondelegation case, in close parallel to *Wright* under California law, addresses and rejects a nondelegation challenge to the federal sentencing guidelines. (*Mistretta v. United States* (1989) 488 U.S. 361.) Consistent with the " 'respectful consideration' " California courts give to high court decisions interpreting parallel text in the United States Constitution. (*People v. Buza* (2018) 4 Cal.5th 658, 684), the California Supreme Court has occasionally drawn upon federal authority in addressing separation of powers issues under our state Constitution, when dealing with those issues in the narrower anti-usurpation sense (*Butt v. State of California* (1992) 4 Cal.4th 668, 703), and in the broader sense of failure to provide adequate safeguards against arbitrary use of delegated power (*El Dorado Oil Works v. McColgan* (1950) 34 Cal.2d 731, 738; see conc. opn. of Goldman, J. at p. 2, fn. 2 [identifying these two different kinds of separation of powers analysis]). But neither of the parties cites federal nondelegation law or suggests it may provide guidance here.

16

Because the rule 4.421(c) residual clause specifies no "criteria" for the use of rule 4.421(c) when used in jury fact-finding, it supplies "unrestricted authority to make fundamental policy decisions" (*Wright*, *supra*, 30 Cal.3d at p. 712) on an ad hoc basis. The rule 4.421(c) residual clause is founded on the section 1170.3 legislative grant, but as it operates today, the rule simply passes that delegated authority along, without interpretation or definitional content, while providing no expert guidance. Prior to Senate Bill 567, under a scheme in which triad choices were governed purely by sentencing court discretion, that was appropriate. Today it no longer is.

Nowhere in the words of the residual clause can any meaningful standard be found. The only guide to textual meaning is scant; the words of rule 4.421(c) residual clause, in sum total, tell us that aggravating conduct must "reasonably relate to the defendant or to the circumstances under which the crime was committed." But that just prompts a series of unanswerable questions. To be covered, must the prosecutor view the aggravating conduct as criminal? Immoral? Distasteful? Politically incorrect? Something else? The answers are nowhere to be found in the clause's language, its context, its structural placement within rule 4.421, or any other clue to interpreting it.

The emptiness of the residual clause invites arbitrary decisionmaking, not uniformity. Prosecutors certainly have discretion to "choose, for each particular case, the actual charges from among those potentially available." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552.) But until now, no one has thought that they may under rule 4.421 draft entirely new allegations for submission to the jury, allegations whose content is not based on any statute or rule, in order to expose the defendant to an increased penalty. As our Supreme Court recognized in *Sandoval*, letting prosecutors draft aggravating factors in this way would be to "exercis[e] a form of

17

discretion" that the Legislature never delegated to them.  (*Sandoval*, *supra*, 41 Cal.4th at p. 848.)

Even assuming we knew what "evidence" the People had in mind when they alleged "similar prior conduct" as a rule 4.421(c) aggravating factor, it is the lack of any ex ante guidance that draws our attention here.  No matter how the residual clause is construed by the People on the day they reveal their evidence at trial, or by the trial court in charging the jury, the standardlessness of the residual clause remains.  A factor that is "reasonably related to the defendant" is unbounded by penological considerations.  This cannot be cured by post hoc construction.  Until trial begins, defendants will be kept in the dark about what an aggravating factor under rule 4.421(c) will mean in their case, and they still may not know what it means when a verdict is returned.

The People argue, in substance, that our opinion in *Chavez Zepeda* dictates that we reject Lovelace's separation of powers argument for the same reasons we rejected that argument there.  According to them, the rule 4.421(c) residual clause reflects no improper delegation because "the public has notice that the presence of an aggravating circumstance may subject a defendant to the upper term the Legislature has specified." (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 86.)  We disagree.  Suffice it to say that the residual clause poses a materially different nondelegation problem than did the five aggravating factors we considered in *Chavez Zepeda*, each of which has been defined with some degree of specificity by the Judicial Council, in accordance with the scheme endorsed by the Supreme Court in *Wright*.

Taking a somewhat different tack, the People also cite *Chavez Zepeda* for the idea that there is no cause for concern about either of Lovelace's constitutional challenges because the trial court can always "dismiss an

18

aggravating circumstance under section 1385 or . . . reject it as inadequately supported after a hearing under Evidence Code section 402." (*Chavez Zepeda, supra,* 97 Cal.App.5th at p. 96.)  But that too is an overreading of *Chavez Zepeda.*  Although these mechanisms provide some degree of protection against the improper charging of the enumerated aggravating factors we addressed in *Chavez Zepeda,* the circumstances faced by a defendant who has no idea how to evaluate or defend against his exposure to an ill-defined aggravating charge are different.  That defendant is worse off than a defendant who faces a known but factually unsupported aggravating charge.  The element of surprise is of more concern in the case of the defendant who can only guess at what he is facing.

Relevant here is *In re Vaquera* (2024) 15 Cal.5th 706.  There, the California Supreme Court invalidated on due process grounds a 25-year-to-life sentence imposed upon a jury's true finding under section 667.61, subdivision (j)(2).  The statute, part of the One Strike sentencing scheme, triggered a mandatory life sentence.  Because the prosecution failed to charge the case under 667.61, subdivision (j)(2) in the original information and submitted the case to the jury on that basis only after amending the information to add the charge 10 days before trial, the court concluded that the defendant was not given fair notice of his sentencing exposure, thus forcing him to make on an uninformed basis "key decisions about how to conduct his defense, 'including whether to plead guilty, how to allocate investigatory resources, and what strategy to deploy at trial.' " (*Vaquera*, at p. 774; see *People v. Mancebo* (2002) 27 Cal.4th 735, 752; *People v. Anderson* (2020) 9 Cal.5th 946.)

*Vaquera*, like this case, addresses a pleading issue.  Though addressed as a due process issue rather than a separation of powers issue, the lack of

19

notice aspect of the court's reasoning is instructive.  As the Supreme Court explained, the analysis it employed asks "whether an accusatory pleading provides fair notice of a potential One Strike sentence," which in turn "requires a careful analysis of the language of the One Strike allegation."  (*In re Vaquera*, *supra*, 15 Cal.5th at p. 724.)  We believe the problem of lack of notice is, if anything, more pronounced in circumstances where, as here, the People rely upon the rule 4.421(c) residual clause to allege a standardless aggravating circumstance.  The availability of procedural tools to weed out or block vaguely pleaded aggravating factors on the eve of trial still leaves defendants facing such charges in the uncertain position of having to prepare their defenses and to plea bargain without any way to evaluate what the charges they face are "worth."

In our *Chavez Zepeda* opinion, we touched on this issue.  We pointed to the Supreme Court's discussion of the importance of informed plea bargaining in *Mendella*, *supra*, 33 Cal.3d 754, which held that defendants may test alleged sentencing enhancement allegations by section 995 motion, a device which " 'operate[s] as a judicial check on the exercise of prosecutorial discretion,' not only in screening out groundless prosecutions, but also in preventing overcharging.' "  (*Chavez Zepeda, supra*, 97 Cal.App.5th at pp. 93–94.)  We said, "We do not doubt that allegations of aggravating circumstances . . . are powerful bargaining tools for the prosecutor, and we consider the overcharging of such allegations to gain unfair leverage in plea negotiations as objectionable as the overcharging of enhancements disapproved of in *Mendella*."  (*Id.* at p. 96.)

Going a step further here, we now invalidate the residual clause at the pleading stage of this case, here for violation of the nondelegation doctrine.  When used as a section 1170, subdivision (b)(2) aggravating factor, it is

20

anyone's guess what the language of the rule 4.421(c) residual clause means. An essential feature of the sentencing scheme addressed in *Wright*—the Judicial Council's independent and impartial role in fleshing out sentencing criteria designed to promote uniformity—is missing here. Instead, the People take the position that they may, in effect, stand in the shoes of the Judicial Council and decide on a case-by-case basis what the rule 4.421(c) residual clause means, ungoverned by the Judicial Council's "extensive experience in determining sentences." (*Wright, supra,* 30 Cal.3d at p. 713.) It is enough, they repeat here again, that the public knows they have this power and that courts can stop them if they go too far.

When offered as a reason to refrain from addressing Lovelace's void-for-vagueness argument, we acknowledge that this line of argument has a degree of force. Courts generally await application of allegedly vague laws before evaluating their facial constitutionality. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084–1085.) But in light of the concerns we expressed in *Chavez Zepeda* about overcharging, we see no reason why the residual clause may not be tested under nondelegation principles now, prior to trial. And when we apply that those principles, the residual clause fails. While the Legislature's reliance upon Judicial Council expertise is proper in authorizing the promulgation of rules which set forth the criteria to be used for a determination of aggravation or mitigation (*Wright, supra,* 30 Cal.3d at pp. 711–714), an open-ended further delegation of that power exceeds the underlying legislative grant in section 1170.3.

"The Judicial Council's authority under section 1170.3 is not unlimited, . . . and the council may not adopt rules that are inconsistent with the governing statutes." (*People v. Hall* (1994) 8 Cal.4th 950, 960 (*Hall*); see Cal. Const. art. VI, § 6, subd. (d); *In re Robin M.* (1978) 21 Cal.3d 337, 346

[invalidating a rule of court to the extent it was inconsistent with legislative intent].)[7] Since rule 4.421(c) is the sole rule 4.421 aggravating factor now lacking either a CALCRIM instruction or a statutory definition, its meaning necessarily must be fleshed out on a case-by-case basis in the context of jury fact-finding. This open-ended grant of authority—leaving it to juries to decide what the residual clause means on the facts presented—is fundamentally inconsistent with the plain terms of section 1170.3, which delegates rulemaking authority to the Judicial Council to "promote uniformity in sentencing."

This defect is of recent vintage. Rule 4.421(c) was adopted in 2018 as a summary of the then-operative determinate sentencing law, which gave *judges* broad sentencing discretion. But that legal premise was undercut by Senate Bill 567 when the Legislature decided to " ' "change the law to ensure that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in *Cunningham v. California*.' ' " (*Lynch*, *supra*, 16 Cal.5th at p. 754.) Now that the Legislature has moved from a sentencing model based purely on judicial discretion (option two in *Cunningham*), to a sentencing model in which that discretion is guided by jury fact-finding (option one in *Cunningham)*, we agree with Lovelace that the Rule 4.421(c) residual clause "has ceased to be an accurate statement of the law." It has become, in short, an artifact of a past era.

---

[7] Whether *Hall* and its progeny are read as nondelegation cases or as an adjacent strand of nonconstitutional precedent, the limit they place on delegated rulemaking power—a limit that is identified via statutory construction, rather than application of constitutional principle—serves the same separation of powers ends that we see in the nondelegation cases. So at the very least, these cases reinforce and complement our nondelegation analysis.

An open-ended grant that means different things to different juries in different localities was clearly not the Judicial Council's intent when it adopted rule 4.421(c).  The *Wright* case is quite different in this respect.  There, the Supreme Court dealt with a set of specifically enumerated aggravating factors promulgated by the Judicial Council, with those factors supplying the "criteria" for uniform, statewide implementation.  The same thing cannot be said of the rule 421(c) residual clause today.  Under rule 4.421(c) as it now stands, with juries fleshing out the meaning of the residual clause by applying it in a situationally-specific manner, every case will be different.  In this respect, the residual clause promotes *non*-uniformity across the state.

The residual clause not only fails to tap any statewide perspective brought by the Judicial Council, it effectively gives prosecutors the authority to formulate upper term sentencing policy case-by-case, accountable only to local demands for maximum punishment of particular individuals or particular crimes, without regard to the declared legislative concern for statewide, intercase uniformity.  This undermines Penal Code section 1170's express goal of statewide uniformity, since it allows local prosecutors to create a patchwork of sentencing regimes in response to purely local concerns.  (*Cf. Hall, supra*, 8 Cal.4th at p. 963 [rejecting proffered interpretation of sentencing rule that would have prohibited consideration of offender's parole status as an aggravator pertinent to imposition of a firearms enhancement on grounds such a limitation would interfere with trial courts' ability to "apply consistently an established and familiar set of aggravating and mitigating factors in their sentencing decisions in all settings"]; *People v. Cheatham* (1979) 23 Cal.3d 829 [same with respect to aggravator pertinent to choice of upper term sentence].)

The fact we are dealing with a de facto *subdelegation* of legislative power to local prosecutors, rather than a first-order exercise of delegated power by the Judicial Council itself, makes the residual clause especially problematic. "When the Legislature has made clear its intent that one public body or official is to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization." (*Bagley v. City of Manhattan Beach* (1976) 18 Cal.3d 22, 24.) We discern no such legislative authorization here. The delegation at issue was made to the Judicial Council, at a time when the promulgated sentencing rules were meant to guide the exercise of traditionally broad judicial discretion in selecting among triad choices. There is no indication in section 1170.3,—read in the context of the statutory scheme as amended by Senate Bill 567—that the Legislature contemplated a further, open-ended delegation to prosecutors.[8]

---

[8] Justice Goldman carefully explores the historical record surrounding the Judicial Council's adoption of rules designed to implement triad sentencing in the late 1970s, taking into account subsequent changes brought about by *Apprendi v. New Jersey* (2000) 530 U.S. 466, and *Blakely v. Washington* (2004) 542 U.S. 296 that, we agree, "fundamentally changed the landscape of modern sentencing law." (*Dillon v. United States* (2010) 560 U.S. 817, 836 (dis. opn. of Stevens, J.).) He concludes that, because of the "long history of reliance on unenumerated aggravating factors—and the existence of rules based on the Judicial Council's conclusion that the Legislature intended to permit their use—. . .the evidence [is not] clear enough to compel the conclusion the Legislature decided to eliminate them with its enactment of Senate Bill 567." (Conc. opn. of Goldman, J. at p. 14.)

We do not disagree, but we see the question to be decided here somewhat differently. Suffice it to say that, *as of 2022,* when the Legislature chose to limit judicial discretion by forbidding the imposition of maximum triad sentences in the absence of predicate facts found by a jury or admitted by the defendant, the residual clause was *at that point in time* rendered "inconsistent with [the] governing statutes." (*Hall, supra,* 8 Cal.4th at

24

Which brings us back to one of the most basic precepts of the nondelegation doctrine—the requirement of safeguards against arbitrariness. Ad hoc decisionmaking by a jury, subject only to whatever reformulation of the residual clause the jury may be given in a pinpoint jury instruction based on the facts presented—such as the vague allegation here that Lovelace committed a "similar prior act"—violates this precept. We recognize that, between 2007 and 2021, the same nondelegation attack that Lovelace mounts here could have been made against the rule 4.421(c) residual clause as it worked in triad sentencing under a system governed purely by judicial discretion. So far as we are aware, however, no such attack was made. That is telling, and it also underscores the central defect we see in the residual clause. Under the old triad sentencing regime, the sound exercise of discretion by experienced trial judges provided the necessary safeguard against arbitrariness. In a jury setting, it no longer does.

To be sure, we do not hold—and we do not suggest—that the nondelegation violation we find on this record is incurable. Certainly, for example, if the Legislature deems an undefined catchall aggravating factor to be consistent with 1170, subdivision (b) as amended by Senate Bill 567, it may enact amendatory legislation authorizing the use of such a factor. And even absent such curative legislation, the Judicial Council, pursuant to the

---

p. 963.) Because this inconsistency is evident from the text and structure of the statutory scheme itself—and specifically from an examination of section 1170, subdivision (b)(1) to (3), which tightly circumscribe judicial discretion and for the first time give a major role to jury fact-finding in the exercise of that discretion—we see no need to delve into the Legislature's intent in the late 1970s or the Judicial Council's understanding back then of the scope of its rulemaking delegation under section 1170.3. None of that vestigial history speaks to legislative intent under the current, dramatically restructured statutory scheme.

25

existing grant of rulemaking authority in section 1170.3, may wish to consider revising Rule 4.421(c) and drafting of a CALCRIM jury instruction providing guidance for the use of unenumerated aggravating sentencing factors, taking into account that any residual clause and standard instruction accompanying it must be compatible with the post-Senate Bill 567 triad sentencing scheme.[9]

## III. DISPOSITION

The rule 4.421(c) residual clause exceeds the legislative delegation in section 1170.3 and thus violates the separation of powers clause of the California Constitution.  Accordingly, the trial court is directed to vacate its order denying Lovelace's section 995 motion and to enter a new and different order sustaining the motion to the extent it seeks to invalidate the residual clause.  At trial, the court is prohibited from permitting a jury to consider making any finding based on the rule 4.421(c) residual clause, namely that circumstances in aggravation may include "[a]ny other factors . . . that reasonably relate to the defendant or the circumstances under which the crime was committed."

The petition for a writ of prohibition is otherwise denied.

STREETER, J.

I CONCUR:

BROWN, P. J.

---

[9] Having resolved this case on nondelegation grounds, we need not reach Lovelace's void-for-vagueness argument.  We agree with much of our concurring colleague's analysis of the due process issue in this case (conc. opn. of Goldman, J. at pp. 26–29), but choose not to decide this case on federal grounds.

26

Goldman, J., Concurring.

I concur in the result reached by the majority, but write separately because I find the question closer and more difficult than the majority opinion seems to me to convey. Because my thinking overlaps only partially with the majority's analysis, I explain below how I have arrived at my conclusions.

Under the rubric of the separation of powers or the nondelegation doctrine, Lovelace offers two different arguments against the residual clause in California Rules of Court, rule 4.421(c) (the residual clause).[1] Both of Lovelace's arguments are based on the enactment of Senate Bill No. 567 (2020–2021 Reg. Sess.) section 1.3, (Senate Bill 567), which in 2022 amended Penal Code section 1170 to provide that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

The first argument, which is discussed primarily in the parties' supplemental briefs, posits that the current version of section 1170 does not permit courts to use an unenumerated aggravating factor to justify the imposition of an upper-term sentence, and therefore that the residual clause is invalid as inconsistent with legislative intent. (See *People v. Hall* (1994) 8 Cal.4th 950, 960 (*Hall*).) The second argument allows that the residual clause may accurately reflect the Legislature's intent, but contends that it

---

[1] All undesignated references to rules are to the California Rules of Court and all undesignated statutory references are to the Penal Code.

1

represents a delegation of legislative authority without adequate guidelines or safeguards.  (See *People v. Wright* (1982) 30 Cal.3d 705, 712–713 (*Wright*).)[2]  Lovelace also challenges the residual clause on due process grounds—an argument the majority does not reach, but one that largely parallels the argument under the nondelegation doctrine.  I address it in the third section below.

## I.

Lovelace's first argument requires us to evaluate the Legislature's intent in the current statutory scheme.  "The Judicial Council's authority under section 1170.3 is not unlimited . . . and the council may not adopt rules that are inconsistent with the governing statutes."  (*Hall, supra*, 8 Cal.4th at p. 960.)

## A.

It is helpful to start with some history, because notwithstanding the changes enacted by Senate Bill 567, much of the relevant statutory language has remained the same, or has changed in minor ways that Lovelace does not contend are material to the issue presented.

As the majority notes, the residual clause became effective only in 2018, but there has been no suggestion here (and nothing in the case law indicates) that it changed sentencing practices in any way.  Consideration of

---

[2] Although the phrase "separation of powers" is sometimes used as an umbrella term that encompasses different kinds of claims, Lovelace's challenge is under the nondelegation doctrine, which prohibits delegations of legislative authority without adequate safeguards, rather than under the separation of powers doctrine more narrowly construed, which prohibits one branch of government from intruding excessively on the functions of another. (See *Butt v. State of California* (1992) 4 Cal.4th 668, 700, fn. 26 ["the California Constitution's separation of powers clause precludes any branch from usurping or improperly interfering with the essential operations of either of the other two branches"].)

2

unenumerated aggravating factors was already contemplated by rule 4.408, which provides in relevant part: "The listing of factors in these rules for making discretionary sentencing decisions is not exhaustive and does not prohibit a trial judge from using additional criteria reasonably related to the decision being made." (Rule 4.408(a); see *People v. Taylor* (1979) 92 Cal.App.3d 831, 833, fn. 1 [characterizing the rule as a "catchall," the intent of which was "to leave the consideration of additional criteria within the discretion of the sentencing court, subject to the reasonable relationship requirement"]; *Wright, supra,* 30 Cal.3d at p. 710.) That rule was among those promulgated by the Judicial Council in 1977 in response to the charge set forth in section 1170.3: "The Judicial Council shall seek to promote uniformity in sentencing under Section 1170 by: [¶] (a) The adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to . . . [¶] (2) Impose the lower or upper prison term"].)[3]

The Judicial Council did not understand rule 4.408 to be the *source* of courts' authority to consider unenumerated aggravating factors. Rather, the rule stood for the proposition that, notwithstanding the enumeration of certain factors in the sentencing rules, judges retained the discretion that the Legislature had otherwise afforded them in section 1170. In other words, it

---

[3] The quoted language was the same when the statute was enacted as it reads today. From March 30, 2007 (when the Legislature abandoned the presumption in favor of the middle term) through December 31, 2021, section 1170.3, subdivision (a)(2) instead read: "Impose the lower, middle, or upper prison term." (Stats. 2007, ch. 3, § 5, eff. Mar. 30, 2007; Stats. 2011, ch. 361, § 11, eff. Sept. 29, 2011, operative Jan. 1, 2014; Stats. 2013, ch. 508, § 10, eff. Jan. 1, 2014, operative Jan. 1, 2017; Stats. 2016, ch. 878, § 10, eff. Jan. 1, 2017, operative Jan. 1, 2022.) Before January 1, 2001, rule 4.408 was numbered rule 408, but to avoid confusion I will refer to it throughout as rule 4.408.

articulated the Council's understanding that the Legislature never intended in section 1170.3 to task it with developing an *exclusive* list of factors for sentencing courts' consideration, and thereby to deny courts their traditional broad discretion to consider any relevant factor.[4]

Whether this view accurately stated the Legislature's intent was the subject of debate when the rules were being drafted. In its "Supplementary Report and Recommendation concerning Sentencing Rules and Sentencing Reporting System"—which was the "report on which the Judicial Council acted in adopting the rules" (*People v. Black* (2005) 35 Cal.4th 1238, 1256, fn. 11 (*Black I*), cert. granted, judg. vacated *sub nom. Black v. California* (2007) 549 U.S. 1190 abrogated by *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*))—the Sentencing Practices Advisory Committee (the committee) noted that "[s]everal commentators urge that the rules provide that the criteria listed are the only criteria which may be applied to sentencing decisions, and accordingly urge that rule 408(a) provide that the listings of criteria are exclusive." (Judicial Council of Cal., Sentencing Practices Advisory Com., Supp. Rep. and Recommendations concerning Sentencing Rules and Sentencing Reporting System (1977) p. 6 (Report).) In rejecting that view, the committee wrote that "the variety of circumstances presented in felony cases is so great that an exclusive listing of criteria could not be constructed which would not produce substantial injustice in a

---

[4] The same understanding continues to be reflected in the residual clause. I agree with the majority that the residual clause does not implement the legislative directive in subdivision (a)(2) of section 1170.3: It does not provide any criteria, and I see no reasonable argument that it does anything to promote uniformity in sentencing either. But in my view, its validity turns not on whether it implements that directive, but on whether the Legislature intended under the current version of the statutory scheme that the Judicial Council's enumeration of aggravating circumstances would be non-exclusive.

significant number of cases.  An exclusive listing would be inconsistent with the statutory mandate to adopt 'rules providing criteria for the consideration of the trial judge' since this language does not purport to limit the discretion afforded the court in each of the five enumerated sentencing decisions, but calls for criteria which will assist the courts in the exercise of that discretion." (Report at p. 6; see also rule 4.408, Advisory Committee comment ["The variety of circumstances presented in felony cases is so great that no listing of criteria could claim to be all-inclusive"].)

Apparently in response to a concern that a non-exclusive list of factors would be inconsistent with the Legislature's stated goal of promoting uniformity in sentencing, the committee further wrote:  "It should be noted that section 1170.3 does not authorize rules which will 'enforce' or 'insure' or even 'direct' uniformity in sentencing.  Indeed, at the same time section 1170 was changed to read 'the court shall apply' the sentencing rules (having previously read 'the court shall take into consideration' the rules), section 1170.3 was rephrased, being changed to read 'shall *seek to* promote uniformity' (having previously read, 'The Judicial Council shall adopt rules to promote uniformity . . .).['] "  (Report, *supra*, at pp. 6–7.)  Thus, the committee seemed to acknowledge that allowing the consideration of unenumerated factors would potentially undermine uniformity, but discerned a legislative recognition in section 1170.3 that uniformity was to some extent an unreachable goal.

Lastly, the committee rejected the argument that section 1170, subdivision (a)(1) required that the listing of factors be exclusive.  At the time, that section expressed the Legislature's view that "the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of the

5

offense as determined by the Legislature to be imposed by the court with specified discretion." (Former § 1170, subd. (a)(1), Added by Stats. 1976, ch. 1139, § 273, amended by Stats. 1977, ch. 165, § 15, eff. June 29, 1977.)[5] According to the committee, the phrase "specified discretion" referred not to discretion as specified in the sentencing rules, but to the discretion granted to the trial court in section 1170.3 "to grant or deny probation, to impose the lower or upper term, to impose concurrent or consecutive sentences, and to strike the additional punishment provided for enhancements charged and found." (Report, *supra*, at p. 7.) The committee thus concluded that the Legislature's objectives were accomplished principally by the sentencing triad, with the Judicial Council's enumeration of aggravating and mitigating circumstances playing a secondary role that did not limit the sentencing

---

[5] Although the language of section 1170, subdivision (a)(1) was later revised, no changes were made by Senate Bill 567. Both before and after January 1, 2022, it read: "The Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice. When a sentence includes incarceration, this purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances." (Former § 1170, subd. (a)(1), Stats. 2020, ch. 29, § 15, eff. Aug. 6, 2020; Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.) In the current version of the statute, effective January 1, 2024, it reads: "The Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice. When a sentence includes incarceration, the deprivation of liberty satisfies the punishment purpose of sentencing. The purpose of incarceration is rehabilitation and successful community reintegration achieved through education, treatment, and active participation in rehabilitative and restorative justice programs. This purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of people incarcerated for committing the same offense under similar circumstances." (§ 1170, subd. (a)(1).)

court's traditional discretion to consider all factors reasonably related to the decision.

The committee's analysis is not binding on courts, and it was never put to the test; notwithstanding the contemporaneous debate, it does not appear that anyone ever challenged rule 4.408.[6]  (Any such challenge presumably would have applied to mitigating circumstances as well as to aggravating circumstances, since there was no suggestion that the statute intended for them to be treated differently.)  Nonetheless, we must assume that, in subsequent amendments to the statutory scheme, the Legislature was aware of rule 4.408—itself an interpretation of the Legislature's intent—and of the cases applying it.  (See *People v. Giordano* (2007) 42 Cal.4th 644, 659 ["The Legislature is presumed to be aware of ' "judicial decisions already in existence, and to have enacted or amended a statute in light thereof" ' "]; *Chavez Zepeda, supra*, 97 Cal.App.5th at p. 76 ["We presume that the Legislature acts against the backdrop of all governing law"].)

**B.**

When California adopted determinate sentencing in 1977, few people would have thought that it implicated either the Sixth Amendment right to jury trial or the Fifth Amendment right to proof beyond a reasonable doubt. The Supreme Court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466

_____

[6] In a case challenging a sentencing judge's reliance on the multiple-victim aggravating circumstance when the defendant pled guilty to kidnapping only one victim, one court did suggest that it would violate the separation of powers for the Legislature or the Judicial Council to limit the factors that judges may consider, concluding that it would impermissibly intrude on an "essentially judicial function."  (*People v. Guevara* (1979) 88 Cal.App.3d 86, 93.)  However, the People have not argued here that consideration of unenumerated factors is required by the separation of powers, and such an argument would likely have little traction under more recent case law.

7

and the cases that followed it, including *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*) and *Cunningham, supra,* 549 U.S. 270, "fundamentally changed the landscape of modern sentencing law." (*Dillon v. United States* (2010) 560 U.S. 817, 836 (dis. opn. of Stevens, J.).) Sentencing "discretion" took on a particular meaning in that context, referring not to the court's ability to take any relevant factor into account, but to its authority to impose a given sentence without finding additional facts that were neither admitted by the defendant nor established by the jury's verdict. (See *Blakely*, at pp. 303–304.)

*Black I* had relied on the judge's discretion to consider unenumerated aggravating factors to find that California's determinate sentencing scheme was also "discretionary" in this second sense. (See *Black I, supra*, 35 Cal.4th at p. 1256 & fn. 11.) Citing rule 4.408(a), the court concluded that "the requirement that an aggravating factor exist is merely a requirement that the decision to impose the upper term be *reasonable*." (*Black I*, at p. 1255.) The United States Supreme Court then held otherwise in *Cunningham*, writing that "broad discretion to decide what facts may support an enhanced sentence . . . does not shield a sentencing system from the force of our decisions." (*Cunningham, supra*, 549 U.S. at p. 290; see *Blakely, supra*, 542 U.S. at p. 305 [finding "immaterial" that "the enumerated grounds for departure . . . are illustrative rather than exhaustive"].) There would thus appear to be no necessary connection between a system that is discretionary in the sense that the judge may consider any relevant factor (whether or not set forth in a statute or rule), and one that is discretionary in the sense that the judge is authorized to impose any legislatively specified sentence without finding additional facts.

In response to *Cunningham*, the Legislature adopted a system that was expressly intended to be discretionary in the second sense.  Ten years passed before the Judicial Council added the residual clause to rule 4.421(c), and the materials available to us do not explain in any detail why its addition was thought necessary given the existence of rule 4.408.  The report by the Criminal Law Advisory Committee states simply that the purpose of the multiple amendments of which this addition was a part was "to reflect changes to California's Determinate Sentencing Law (DSL) after the U.S. Supreme Court's decision in *Cunningham v. California* (2007) 549 U.S. 270 and the legislative responses to that decision, and provide further guidance to judges in exercising sentencing discretion under the DSL."  (Judicial Council of Cal., Crim. Law Advisory Com. Rep., Criminal Law: Felony Sentencing (2017) p. 2.)[7]  The residual clause merely reiterated what had been true from the beginning, as *Black I* emphasized—that the legislative scheme did not restrict courts' discretion to consider unenumerated aggravating factors.

### C.

Without expressly drawing the distinction, Lovelace argues that the enactment of Senate Bill 567 eliminated "discretionary" sentencing in *both* senses:  It removed courts' ability to impose an upper-term sentence without a jury finding of aggravating circumstances, and also their ability to rely on any aggravating factor not set forth in a statute or rule.  The People respond that nothing in Senate Bill 567 purported to limit the sentencing court's

---

[7] Before the amendment, rule 4.421(c) referred only to statutory aggravating factors, and as the majority notes *ante* at pages 7–8, the Invitation to Comment stated that the amendment was intended to "recognize" that the court could also consider "factors that reasonably relate to the defendant or the circumstances under which the crime was committed."  (Judicial Council of Cal., Crim. Law Advisory Com., Invitation to Comment, SPR17-09 (2017) Criminal Law:  Felony Sentencing, p. 4.)

9

discretion to consider unenumerated aggravating factors; in their view, courts possess all the discretion they previously possessed, subject only to the requirement that now the jury must find true any aggravating factor before the court may consider it in imposing sentence.

The People are correct that there is nothing in the amendments enacted by Senate Bill 567 expressly providing that courts may not consider unenumerated aggravating circumstances.  By the same token, there was never any statutory language clearly providing that courts' authority to consider aggravating circumstances was unlimited.

In describing the kind of information that the court could consider, the pre-*Cunningham* version of section 1170, subdivision (b) provided in relevant part:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.  At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts.  In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (Stats. 2004, ch. 747, § 1, p. 648.)  While there was never a challenge to rule 4.408, in other contexts the provision just quoted was cited as the basis for an expansive grant of discretion to the sentencing judge.

10

(See, e.g., *People v. Cheatham* (1979) 23 Cal.3d 829, 836 [reading the reference to the "probation officer's report" to preclude the defendant's argument that the Legislature contemplated that the sentencing judge will consider only facts related to the crime and not facts related to the defendant]; *Hall, supra*, 8 Cal.4th at pp. 960–961 [citing the same provision in deciding that former rule 428(b) was invalid insofar as it allowed imposition of the upper term for an enhancement only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement].)  Under the post-*Cunningham* scheme, the sentencing judge was similarly authorized to consider all of this information when selecting the appropriate term.  (Former section 1170, subd. (b), Stats. 2007, ch. 3, § 2; see *People v. Sandoval* (2007) 41 Cal.4th 825, 848 (*Sandoval*).)

As Lovelace argues, after Senate Bill 567, a court may impose an upper-term sentence only if it finds that it is justified by the jury's findings on aggravating factors and/or by the defendant's prior convictions.  (§ 1170, subd. (b)(2), (3); see *People v. Lynch* (2024) 16 Cal.5th 730, 763 (*Lynch*).)  The language referring to the probation officer's report and statements from the parties and the victim now appears in subdivision (b)(4) of section 1170; unlike in prior versions of the statute, this subdivision does not identify the purpose for which the information may be considered, but read as a whole, the statute does not permit the court to impose the upper term based on claimed aggravating circumstances submitted under that subdivision.

Moreover, although it was discussing the discretionary post-*Cunningham* sentencing scheme, the California Supreme Court wrote in *Sandoval* that it would be inconsistent with legislative intent to allow the prosecutor to draft aggravating circumstances when the Legislature made the court responsible for selecting the appropriate term:  "If the prosecutor

11

were to decide which circumstances of the offense justify an upper term and thereby charge defendant accordingly, the prosecutor would be exercising a form of discretion that the Legislature intended to be exercised by the court. To avoid that problem, a prosecutor might be limited to charging aggravating factors specified in rules or statutes, but that approach would distort the process in a different way—the scope of potentially aggravating circumstances would be severely limited." (*Sandoval, supra*, 41 Cal.4th at p. 848.) As amended by Senate Bill 567, subdivision (b)(2) of section 1170 contemplates that "circumstances in aggravation" will be "alleged in the indictment or information"—more on this point below—but there is nothing else to suggest that the Legislature intended to strike the particular compromise that *Sandoval* envisioned—i.e., a severe limitation on the "the scope of potentially aggravating circumstances." (Cf. *Chavez Zepeda, supra*, 97 Cal.App.5th at p. 78 [noting that in enacting Senate Bill 567, the Legislature adopted the "more complicated" post-*Cunningham* alternative notwithstanding the concerns that *Sandoval* had expressed about the then-hypothetical scheme].)

### D.

Considering all of the foregoing, the evidence of legislative intent with respect to unenumerated aggravating factors in the current statutory scheme strikes me as inconclusive. For the majority, the strongest indication is the Legislature's purposeful abandonment of a regime that is "discretionary" in the *Blakely/Cunningham* sense—i.e., in which the court is authorized to impose any sentence in the triad without additional factual findings. I find it difficult to conclude on that basis alone that the Legislature also intended to abandon unenumerated aggravating factors—the other sense of broad sentencing "discretion"—in part because there is no necessary connection

12

between the two and the Supreme Court in both *Blakely* and *Cunningham* rejected the proposition that one followed from the other. It is at least plausible to contend, as the People do, that the Legislature intended only to create additional procedural safeguards that would attach to any aggravating factor charged by the prosecution, whether or not set forth in any statute or rule.

The Legislature's intent with respect to the use of unenumerated aggravating factors has never been expressly stated. The original analysis by the Sentencing Practices Advisory Committee was assembled from clues, and its conclusion, while reasonable, was not the only possible one. It appears to have been driven largely by the concern that restricting sentencing decisions to enumerated factors would require an unacceptable disregard of relevant information—a policy consideration that the committee recognized might be in tension with the Legislature's stated goal of promoting uniformity. Nonetheless, while a different conclusion may have been possible in 1977, the interpretation of legislative intent reflected in rule 4.408 and the residual clause has now been a central feature of determinate sentencing for a very long time. In my view, it would be unlikely for the Legislature to repudiate it after 45 years only sub silentio.

It is not that there is nothing Lovelace can point to. As discussed above, the amendments enacted by Senate Bill 567 do remove traditional sources of information about circumstances in aggravation (now contained in section 1170, subdivision (b)(4)) from the court's consideration when deciding whether the upper term is justified. Moreover, allowing the prosecution to draft its own aggravating factors and present them to a jury does represent a significant shift in sentencing power that carries unique risks, and as the Supreme Court suggested (*Sandoval, supra*, 41 Cal.4th at p. 848), if such a

13

delegation were intended, one might expect the Legislature say so expressly. But nothing in the statutory scheme would appear to preclude a procedure in which the prosecution charges an unenumerated aggravating factor and presents it to the jury in a bifurcated trial. Nor has Lovelace shown that such a procedure would necessarily undermine the purpose of the amendments enacted by Senate Bill 567, which was " 'to ensure that harsher sentences receive the greatest scrutiny and justification before they are imposed' " and to give defendants a better opportunity " 'to dispute the information on the record that may not be true' " by " 'allowing aggravating factors to be submitted to the factfinder.' " (*Chavez Zepeda, supra*, 97 Cal.App.5th at p. 74 [quoting Sen. Com. on Public Safety, Analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended Mar. 9, 2021, p. 4].)[8] Given the long history of reliance on unenumerated aggravating factors—and the existence of rules based on the Judicial Council's conclusion that the Legislature intended to permit their use—I do not think the evidence is clear enough to compel the conclusion Legislature decided to eliminate them with its enactment of Senate Bill 567.

## II.

If the Legislature did not expressly intend to require courts to abandon unenumerated aggravating factors, that result may nonetheless be a legal

---

[8] That said, one could reasonably question whether the use of unenumerated aggravating factors furthers the goal of ensuring "that harsher sentences receive the greatest scrutiny and justification." Aggravating factors drafted on an ad hoc basis are more adaptable than, and do not receive the same vetting as, enumerated aggravating factors, thereby potentially giving greater rein to the predilections of individual prosecutors and judges. But there is nothing to indicate that the Legislature considered whether eliminating unenumerated aggravating factors would contribute to ensuring that upper-term sentences "receive the greatest scrutiny and justification."

14

consequence of its decision to make the middle term the maximum that may be imposed without additional jury factfinding. This section addresses Lovelace's argument that, following the enactment of Senate Bill 567, the residual clause violates the nondelegation doctrine.

## A.

I agree with the majority that Lovelace's nondelegation claim is not resolved by the California Supreme Court's decision in *Wright, supra*, 30 Cal.3d 705. To begin with, the challenge in that case was limited to the Judicial Council's enumeration of aggravating and mitigating circumstances in former rules 421 and 423; no question was raised about the Council's interpretation of legislative intent as reflected in what is now rule 4.408. (See *Wright*, at p. 708.)

Moreover, the court's reasoning does not apply to the residual clause. The Legislature made the policy decision that the appropriate sentencing option in the triad was to be selected "on the basis of circumstances relating to the crime and to the defendant," and the Legislature provided the Judicial Council with standards that were "sufficiently precise in the circumstances" by directing it "to promote uniformity in sentencing" (§ 1170.3) and by specifying "in the correlative provision of Penal Code section 1170, subdivision (b) . . . that the criteria be based on the absence or presence of aggravating or mitigating circumstances." (*Wright, supra*, 30 Cal.3d at p. 713.) It was significant to the court's decision, however, that the "Judicial Council because of its membership including justices and judges who have extensive experience in determining sentences is uniquely situated to implement the legislative policy." (*Ibid.*)

Here, we are not dealing with a delegation of authority to the Judicial Council. While the majority refers to a "subdelegation" of authority by the

15

Judicial Council, if the residual clause accurately reflects the Legislature's intent, ultimately it is delegation of authority by the Legislature, whether to the prosecution (insofar as it may charge unenumerated aggravating factors and present them to the jury) or to the court (insofar as it may decide whether to permit the prosecution to try a charged unenumerated factor and is responsible for deciding whether to impose the upper term if the jury returns a true finding). Not only does the Judicial Council have unique institutional competence, but the risk of arbitrariness is greater when authority is delegated to be exercised on an ad hoc basis (i.e., in each individual case) than when it is delegated for the purpose of drafting rules of statewide application. Accordingly, *Wright* had no occasion to consider a delegation of authority of the sort at issue here.

**B.**

Under the current version of section 1170, "the aggravating facts used to 'justify' an upper term sentence . . . effectively function like elements of a crime." (*Lynch, supra*, 16 Cal.5th at p. 760.) I agree with the majority that any delegation of authority to define them violates the separation of powers in the absence of adequate safeguards against arbitrariness or misuse. (*Kugler v. Yocum* (1968) 69 Cal.2d 371, 381; see also *Wright, supra*, 30 Cal.3d at p. 712.)

As the majority points out, under the current version of section 1170, the delegation (or subdelegation) of authority is to the prosecution rather than to the court, with the jury deciding whether the aggravating factor is true. The People seek to diminish the significance of any authority delegated to them, arguing that section 1170, subdivision (b)(2) now imposes a pleading requirement that subjects aggravating factors to the court's review under section 1385, beyond other opportunities the court may have to evaluate any

16

unenumerated factor the prosecution proposes. (See *In re Varnell* (2003) 30 Cal.4th 1132, 1139 [section 1385 does not permit review of "*uncharged* sentencing factors, such as those that are relevant . . . to select among the aggravated, middle, or mitigated terms"].) Assuming the trial court allows the aggravating factor to be tried to the jury, the People add, they must then prove it beyond a reasonable doubt, and the court may still disregard it when sentencing the defendant.

The People's argument, even if fully credited, is not necessarily conclusive. As both parties acknowledged at oral argument, prior to Senate Bill 567, the residual clause allowed the *court* to identify unenumerated aggravating factors, whereas now the court must make its sentencing decision based on factors the prosecution has charged. The fact that the court is not required to impose a higher sentence once aggravating factors are found true does not negate this shift from the court to the prosecution in the power to identify relevant sentencing considerations.[9] More importantly, the trial court's role—whether in exercising oversight before an aggravating factor is tried or at sentencing in determining whether the upper term is justified—does not solve the potential nondelegation problem unless there are sufficiently clear standards to guide the court's decisions and guard against arbitrariness.

---

[9] In addition, as we noted in *Chavez Zepeda, supra,* 97 Cal.App.5th at page 96—and as the majority observes in its decision today—the prosecution's identification of aggravating factors has effects on the defendant prior to the imposition of sentence. For example, it is powerful leverage for the prosecution in plea bargaining, and any factors identified will command defense resources at trial. When the prosecution is free to craft aggravating factors on an ad hoc basis, there is an additional risk that they may be used improperly or unfairly earlier in the case.

17

Although the analogy has not been drawn by the parties, Lovelace's nondelegation claim resembles one that has been raised in federal capital cases.  The Federal Death Penalty Act (FDPA) sets forth multiple aggravating factors, but also allows the prosecutor to submit non-statutory aggravating factors to the jury.  The jury must identify the aggravating factors it finds to exist, and if there is at least one statutory aggravating factor, it must then determine whether the aggravating factors "sufficiently outweigh" the mitigating factors to justify a sentence of death.  (See 18 U.S.C. §§ 3592, 3593.)  In relevant part, the statute provides:  "The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a).  Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  (18 U.S.C. § 3593(c).)

Federal courts have considered claims that this section is an unconstitutional delegation of legislative power, with the prosecution " 'limited only by its imagination' in deciding what qualifies as an aggravator."  (*United States v. Mitchell* (9th Cir. 2007) 502 F.3d 931, 978–979 (*Mitchell*).)  Their analysis in rejecting those claims is at least potentially instructive in evaluating the parties' arguments here.

First, at least one court concluded that the requirement that one or more statutory aggravating factors be found to exist means that there is no delegation of legislative authority at all (see *United States v. Higgs* (4th Cir. 2003) 353 F.3d 281, 321), whereas other courts have viewed that requirement as a limitation on the delegated authority (e.g., *United States v. Jones* (5th Cir. 1998) 132 F.3d 232, 240 (*Jones*); *Mitchell, supra*, 502 F.3d at p. 979;

18

*United States v. Paul* (8th Cir. 2000) 217 F.3d 989, 1003).  Either way, that consideration cannot weigh in favor of the People's argument here, because there is no requirement in either section 1170 or in the sentencing rules that the jury find at least one statutory or enumerated aggravating factor to be true.  Similarly, while some courts have cited the constitutional necessity of individualized consideration in death penalty cases in finding no impermissible delegation (e.g., *United States v. McCullah* (10th Cir. 1996) 76 F.3d 1087, 1107; *United States v. Pitera* (E.D.N.Y. 1992) 795 F.Supp. 546, 562 (*Pitera*)), that issue has no bearing here, where we are concerned with a non-capital determinate sentencing scheme.

Of potential relevance, however, are other limiting principles that courts have found applicable to the use of non-statutory aggravating factors. Based on arguments the People make in their briefing, I address them under three headings:  the notice requirement, the reasonable relationship requirement, and the requirement that an aggravating factor make the commission of the crime distinctively worse than an "ordinary" commission of the same offense.

### *Notice*

Federal courts have pointed out that, by its express terms, the FDPA prohibits the government from relying on any non-statutory aggravating factor for which it has not provided notice.  (E.g., *Mitchell, supra*, 502 F.3d at p. 979; *Jones, supra*, 132 F.3d at p. 240; see 18 U.S.C. § 3593(a), (c).)  Here, the unenumerated aggravating factor was alleged in the information, and subdivision (b)(2) of section 1170 provides that, "upon request of the defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements."  As noted above, the People contend that this language

19

establishes a pleading requirement for aggravating factors, including unenumerated ones.  Although at least one court has found the language ambiguous on that score (see *People v. Pantaleon* (2023) 89 Cal.App.5th 932, 940), it seems to me that the People's reading is correct; while the statute does not expressly say that circumstances in aggravation must be alleged, it would defeat the Legislature's purpose in requiring bifurcation if the prosecution could avoid it simply by declining to plead them.

A pleading requirement, however, does not solve all potential notice problems.  As the majority suggests, one difficulty with unenumerated aggravating factors is that they do not have an established meaning that has been worked out in the case law or in model jury instructions.  There is some murkiness to the unenumerated factor here—that the defendant has engaged in "prior similar conduct."  While section 1170, subdivision (b)(2) may require the prosecution to provide defendants with notice of aggravating factors early in the case, that requirement is potentially less significant as applied to factors that the prosecution has drafted on an ad hoc basis.

### *Reasonable Relationship*

Concerns about the leeway afforded to prosecutors and the meaningfulness of any notice requirement can be mitigated to some extent by a provision for trial court review of any proposed unenumerated aggravating factor conducted under adequately clear standards.  In the context of the FDPA, courts have pointed out that the statute expressly contemplates a gatekeeping role for the court, providing for the exclusion of any aggravating factor that would be unfairly prejudicial, confusing, or misleading.  (*Mitchell, supra,* 502 F.3d at p. 979; *Jones, supra,* 132 F.3d at p. 240; *United States v. Frank* (S.D.N.Y. 1998) 8 F.Supp.2d 253, 265; see 18 U.S.C. § 3593, subd. (c).)  The courts thus have an opportunity to ensure, for example, that the

proposed factor relates to the circumstances of the crime or the characteristics of the defendant (e.g., *United States v. Pretlow* (D.N.J. 1991) 779 F.Supp. 758, 767; *Pitera, supra*, 795 F.Supp. at p. 562), and is not improperly duplicative of other factors or unconstitutionally vague (e.g., *Jones, supra*, at pp. 250–251; *Frank*, at p. 265).

The People make a parallel argument here, arguing that there are opportunities for trial court review to ensure, as provided by the residual clause, that the proposed aggravating factor is "reasonably related" to the crime or the defendant. (See *Black I, supra*, 35 Cal.4th at p. 1255; *Sandoval, supra*, 41 Cal.4th at p. 847 ["As under the former scheme, a trial court will abuse its discretion under the amended scheme if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision"].)

As a procedural matter, the People may be correct that a trial court will have opportunities to review a proposed unenumerated aggravating factor before it is presented to a jury, although as their argument about section 1385 suggests, such review may involve adapting other procedures that were created for a different purpose. The parties have not provided us with any information about whether such review is routinely provided and under what standards. In the absence of an express provision for a trial court's pretrial evaluation of a proposed unenumerated aggravating factor, the nature of any review may depend on happenstance or on the particularities of an individual judge's practice. Under these circumstances, it is difficult to conclude that the statute establishes an adequate procedural safeguard.

Substantively, Lovelace argues that the reasonable relationship requirement is "entirely vacuous, since it would be irrational to increase a

21

defendant's sentence based on a fact which has no connection to him or his crime." It is true that the reasonable relationship requirement in the residual clause—or rule 4.408, given its much longer existence—has not typically been read as a significant limiting principle. (*People v. Stanley* (1984) 161 Cal.App.3d 144, 150 ["The scope of information a sentencing court may consider is very broad"]; *People v. Guevara, supra*, 88 Cal.App.3d at p. 93 [" 'Circumstances' include 'practically everything which has a legitimate bearing' on the matter in issue"]; *People v. Hubbell* (1980) 108 Cal.App.3d 253, 256 ["There are few limitations on what a sentencing court can and should consider at time of sentencing"].) Reported decisions in which it appears generally affirm the trial court's reliance on particular information. (E.g., *People v. Taylor, supra*, 92 Cal.App.3d at p. 833 [defendant's "arrest record"]; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 627 [defendant's "postsentencing conduct while in prison"].)[10] The People have made no effort to articulate its outer boundaries, and I am aware of only one published decision holding that an unenumerated aggravating factor failed to satisfy the reasonable relationship test—a holding that the California Supreme Court later disapproved. (See *People v. Levitt* (1984) 156 Cal.App.3d 500, 516–517 [concluding that the bereavement of the victim's family bore "no rational relationship to [the defendant's] degree of culpability"], disapproved

---

[10] The case law available to a California trial court considering an unenumerated aggravating factor is relatively limited. While a sentencing court must state its reasons on the record, generally the reasons will not be in writing, and there is no reporter for California trial court decisions in any event. Moreover, unlike in the federal system, unpublished California appellate decisions may not be cited. (Rule 8.1115(a).)

of in *People v. Johnson* (2016) 62 Cal.4th 600, 649, fn. 6.)[11]  Still, while the majority appears to endorse Lovelace's view that the reasonable relationship requirement is "vacuous," I think it is necessary to acknowledge that the California Supreme Court has cited it as a constraint on sentencing, even if not in the context of considering a nondelegation claim.  (*Black I, supra,* 35 Cal.4th at p. 1255; *Sandoval, supra*, 41 Cal.4th at pp. 847–848.)  I read the majority opinion to say that the concept of a "reasonable relationship" to the crime or the defendant is so expansive as to offer an inadequate safeguard against arbitrariness under the nondelegation doctrine—in essence, it offers no more content than a directive to exercise the delegated authority "reasonably"—but there appears to be little case law on point.

Even if the reasonable relationship requirement has operated historically as a meaningful constraint on the exercise of judicial sentencing discretion, it is worth noting that it was never developed as a standard to guide jury decisionmaking, unlike the FDPA's requirement that the court consider whether the proposed factor would be unfairly prejudicial, confusing, or misleading.  (18 U.S.C. § 3593(c).)  Nothing in the amendments enacted by Senate Bill 567 directs the court's attention to particular risks that may arise from the prosecution's ability to draft its own aggravating circumstances and to try them alongside enumerated or statutory factors.  Nor is there anything

---

[11] In one other case, the reviewing court found that the trial court's reliance on an unenumerated factor to impose consecutive sentences failed the test.  (*In re Spears* (1984) 157 Cal.App.3d 1203, 1212–1213 ["We find the rationale that, if a defendant is going to necessarily serve a significant amount of time in prison as a result of one charge, he should be kept in prison until he is no longer a young man because of the possible adverse effects prison life might have on him, not reasonably related to the sentencing decision being made and, therefore, an impermissible basis for imposing consecutive sentences"].)

23

in the residual clause or in the other sentencing rules that addresses them. Thus, whatever boundaries the reasonable relationship requirement supplies, they likely do not operate as a safeguard to the same extent as the FDPA's express provision for trial court review of a non-statutory aggravating factor that the prosecution proposes to present to the jury.

### *Distinctively Worse Than the Ordinary*

Lastly, courts applying the FDPA have emphasized that non-statutory aggravating factors must conform to the Supreme Court's death penalty jurisprudence, including the requirement that they "genuinely narrow the class of persons eligible for the death penalty." (*Jones, supra*, 132 F.3d at p. 240 [citing *Zant v. Stephens* (1983) 462 U.S. 862, 877]; see *Mitchell, supra*, 502 F.3d at p. 979.) Although the People do not explicitly argue that it operates as a check on delegated authority, they note that unenumerated aggravating factors, like enumerated factors, are subject to the requirement that they make the commission of the offense "distinctively worse than the ordinary." (*People v. Black* (2007) 41 Cal.4th 799, 817 (*Black II*); see *Chavez Zepeda, supra*, 97 Cal.App.5th at pp. 89–91; *People v. Rodriguez* (1993) 21 Cal.App.4th 232, 241–242 [defendant's act of "reracking" his pistol was an invalid aggravating factor because it did not make his use of a firearm distinctively worse]; *People v. Fernandez* (1990) 226 Cal.App.3d 669, 682 [trial court's observations that defendant's behavior "shows an inability or refusal to 'conform to the mores of society'; and . . . 'is beyond all acceptable norms of society that we live in today' " were invalid aggravating factors because they would apply to all persons convicted of the same crime].) Reflecting this case law, the jury instructions for enumerated aggravating factors require the jury to find that "the People have proved that the defendant's conduct was distinctively worse than an ordinary commission of

the underlying crime." (CALCRIM Nos. 3224–3234.) While we had no occasion to decide whether the language of the jury instruction satisfied constitutional standards, in *Chavez Zepeda* "we d[id] not find the requirement that an aggravating circumstance makes the commission of the offense distinctively worse 'when compared to other ways in which such a crime could be committed' . . . so vague as to place the task beyond any jury's competence and thereby to give rise to unacceptable arbitrariness." (*Chavez Zepeda, supra*, 97 Cal.App.5th at p. 91 & fn. 6.) Although there is no model jury instruction for an unenumerated aggravating factor (since the proposed factor will differ from case to case), any instruction the court gives should presumably require the same finding, assuming the court has not concluded that the proposed aggravating factor cannot satisfy it as a matter of law.

Thus, notwithstanding its absence from section 1170 and the residual clause, the "distinctively worse than the ordinary" requirement does operate as a constraint on the exercise of any authority to draft an unenumerated aggravating factor. Historically it appears to have served a narrowing function that goes beyond any limits supplied by the reasonable relationship requirement, even if, in the context of unenumerated aggravating factors, it remains open ended about the ways in which the commission of the offense could be considered "distinctively worse" than the "ordinary" case. But as noted, the parties themselves have not developed arguments about how significantly this requirement should weigh in the nondelegation analysis.

To sum up, while unenumerated aggravating factors in California lack the constraint supplied by the requirement under the FDPA that the jury find at least one statutory aggravating factor, they are subject to three limitations that bear some similarity to those that federal courts have found relevant in the FDPA context: The prosecution must provide the defendant

25

with notice by alleging an unenumerated aggravating factor in the indictment or information; the trial court should determine that the proposed factor is "reasonably related" to the crime or to the defendant; and there should be a finding that the factor makes the defendant's commission of the crime distinctively worse than the "ordinary" commission of the same crime. Despite the similarities, however, as discussed above there is reason to find these requirements somewhat weaker. Even assuming that section 1170, subdivision (b)(2) imposes a pleading requirement, there is no express provision for the trial court's review of a proposed unenumerated aggravating factor to determine whether the prosecution should be permitted to present it to the jury. In addition, there is almost no published authority identifying the outer limits of the reasonable relationship requirement, which was intended to be very broad. At least in a system in which "the aggravating facts used to 'justify' an upper term sentence . . . effectively function like elements of a crime" (*Lynch, supra*, 16 Cal.5th at p. 760), I am inclined to agree with the majority that such a minimal limitation does not furnish courts with a meaningful standard, particularly in the context of jury decisionmaking, and inadequately mitigates the risk of arbitrariness. Finally, while the "distinctively worse than the ordinary" requirement does supply an additional constraint, it provides no guidance about the ways in which an offense's commission might be considered distinctively worse, and on its own is unlikely to make up for the lack of standards in the residual clause or the statutory framework.

## III.

Lovelace's due process claim, which the majority does not reach, warrants brief discussion because it does not differ significantly from his nondelegation claim. As we explained in *Chavez Zepeda*, *Apprendi* and its

26

progeny indicate that sentencing schemes like the one established by Senate Bill 567 create a liberty interest in a sentence that does not exceed the relevant statutory maximum—here, the middle term—and this interest is one to which due process protections attach.  (*Chavez Zepeda, supra*, 97 Cal.App.5th at p. 84.)  To say that the residual clause lacks adequate safeguards under the nondelegation doctrine is also to say that it is unacceptably vague in violation of due process.  (See *Chavez Zepeda, supra*, 97 Cal.App.5th at p. 82 ["the prohibition against vague laws 'rests on the twin constitutional pillars of due process and separation of powers' "] [quoting *United States v. Davis* (2019) 588 U.S. 445, 451].)

Although we had no occasion to decide the validity of the residual clause in *Chavez Zepeda*, we noted that the Arizona high court invalidated on due process grounds the use of "catch-all aggravator[s]" to exceed the presumptive term when no enumerated aggravating factor was found consistently with *Apprendi*.  (*Chavez Zepeda, supra*, 97 Cal.App.5th at p. 84, citing *State v. Schmidt* (2009) 220 Ariz. 563, 565–566 (*Schmidt*) and *State v. Bonfiglio* (2013) 231 Ariz. 371, 373 & fn. 1 (*Bonfiglio*).)  In *Schmidt*, the catch-all aggravator allowed the sentencing judge to consider " '[a]ny other factors which the court may deem appropriate to the ends of justice' " (*Schmidt*, at p. 566); when *Bonfiglio* was decided, the catch-all had been amended to read, " 'Any other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime' " (*Bonfiglio*, at p. 373).

*Schmidt* observed that, under *Apprendi*, "any fact that 'the law makes essential to the punishment' is the 'functional equivalent of an element of a greater offense,' and is to be treated accordingly."  (*Schmidt, supra*, 220 Ariz. at p. 565.)  Noting that due process requires both fair notice of the acts

deemed worthy of punishment and, more importantly, sufficient definiteness to avoid arbitrary enforcement, the court found that "use of the catch-all as the sole factor to increase a defendant's statutory maximum sentence violates due process because it gives the sentencing court virtually unlimited post hoc discretion to determine whether the defendant's prior conduct is the functional equivalent of an element of the aggravated offense." (*Id.* at p. 566.)

As discussed in the previous section, while there are constraints on what may qualify as a valid aggravating factor under California's similarly-worded residual clause, they are somewhat less robust, both procedurally and substantively, than the limits that courts have found adequate in a nondelegation challenge under the FDPA. The People have offered no persuasive reason to conclude that their inadequacy under the nondelegation doctrine would not also establish their inadequacy under due process.

One difference between California and Arizona law should be noted: While *Schmidt* and *Bonfiglio* found that judges could rely on the catch-all aggravator when at least one enumerated aggravating factor had been found consistently with *Apprendi*, that conclusion was based on the proposition that only one aggravating factor was necessary to establish the defendant's eligibility for an aggravated sentence. (*Schmidt, supra*, 220 Ariz. at p. 566; *Bonfiglio, supra*, 231 Ariz. at p. 374.) As our Supreme Court recently held, the same cannot be said of the current version of section 1170 because it "eliminates any purported distinction" between aggravating facts that establish eligibility for an upper-term sentence and those that justify its imposition. (*Lynch, supra*, 16 Cal.5th at p. 763; see § 1170, subd. (b)(2) [the court must find that "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle

28

term"].)  Accordingly, "the existence of a single aggravating circumstance does not satisfy *Apprendi*'s jury trial requirement because the trial court must justify imposition of that sentence." (*Lynch*, at p. 763.)  The residual clause is thus constitutionally problematic in any case in which it furnishes a factor on which the sentencing judge relies to justify the imposition of an upper-term sentence.

## IV.

If the evidence of legislative intent is inconclusive and the nondelegation and due process questions are at least close, one might appropriately invoke the maxim that " ' "a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity." ' " (*People v. Leiva* (2013) 56 Cal.4th 498, 506–507.)  At a minimum, in my view the use of unenumerated aggravating factors in the current statutory scheme does raise serious constitutional questions.  And there is at least some basis to construe the amendments enacted by Senate Bill 567 to eliminate them, or to question whether the Legislature intended, without expressly saying so, to give prosecutors a power to define aggravating factors that for decades had belonged to the court.  But I reach this conclusion hesitantly.  This is an important issue about which the Legislature should make its intent express, and if it wishes to preserve a role for unenumerated aggravating factors, it should ensure that adequate procedural and substantive safeguards are in place.

Trial Court:          Superior Court of California, City and County of San
                      Francisco

Trial Judge:          Hon. Eric R. Fleming

Counsel:              Manohar Raju, Public Defender, Matt Gonzalez, Chief
                      Attorney, Matt Sotorosen and Oliver Kroll, Deputy
                      Public Defenders, for Petitioner.

                      No appearance for Respondent.

                      Brooke Jenkins, District Attorney, Maria Shih and Natalie
                      Fuchs, Assistant District Attorneys, for Real Party in
                      Interest.